IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **City of East St. Louis, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Civil No. 13-982-DRH-PMF** |
| | ) | |
| | ) | |
| **United States Department of Housing** | ) | |
| **and Urban Development, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MOTION TO DISMISS</u>

The federal defendants, the United States Department of Housing and Urban Development ("HUD"), Shaun Donovan, Secretary of HUD, and John Finger respectfully move this Court pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of subject matter jurisdiction.[1]

## <u>INTRODUCTION</u>

Plaintiffs originally filed this suit to prevent the East St. Louis Housing Authority (the "Housing Authority" or "ESLHA") – which is currently under HUD's control – from transferring its public housing program to the St. Clair County Housing Authority.   HUD moved to dismiss, explaining, among other things, that plaintiffs' claim was not ripe for adjudication and that in any event, the applicable statute shields HUD from liability for acts taken while in possession of a Housing Authority.   Rather than addressing these defects, plaintiffs filed a new complaint seeking even more extraordinary relief.   Now they ask the Court to help them seize control of the Housing Authority for themselves.   In particular, they ask the Court to "terminate" HUD's control over the

---

[1] The following exhibits are attached in support of this motion: Exhibit 1: Order dated Jan. 3, 2014, entered in <u>Garcia v. Housing Authority of New Orleans</u>, Civ. No. 12-1843 (E.D. La.); Exhibit 2: Resolution and Intergovernmental Agreement.

Housing Authority and "return" it to the five individual plaintiffs, who purport to be the "Local Commissioners."

Plaintiffs' new claims, like the old ones, are not subject to judicial review and should be dismissed for lack of jurisdiction.   HUD took possession of the ESLHA because the housing authority had substantially defaulted on its obligations in operating the federal housing program. The United States Housing Act of 1937, as amended, grants HUD broad discretion to exercise such control and expressly prohibits judicial review of its decisions.   As a result, the Court has no jurisdiction to second-guess how HUD chooses to exercise control over housing authorities in its possession, and certainly no authority to "return" such control to plaintiffs here.   Plaintiffs assert that the Housing Act authorizes the Court to "terminate" HUD's involvement, but plaintiffs are misreading the plain language of the Act and ignoring Congress's express ban on judicial review. Plaintiffs' attempt to seize control of the ESLHA should thus be rejected.

Plaintiffs assert an additional claim that should also be dismissed.   In 2013, the ESLHA, acting under HUD's control, transferred operation of its Section 8 voucher program to the St. Clair County Housing Authority.   Unlike the potential future transfer of the public housing program, which was the focus of the original complaint, the transfer of the Section 8 voucher program has already occurred, and plaintiff's challenge is thus not subject to dismissal on ripeness grounds.   It is, however, subject to dismissal on a number of other grounds.   It should be dismissed because the Housing Act prohibits judicial review and also because the Housing Act expressly shields HUD from liability for acts taken while in possession of a housing authority.   In any event, plaintiffs' challenge to the transfer of the voucher program is legally baseless.

2

**BACKGROUND**

**I.     Statutory Background**

The public housing program established by the United States Housing Act of 1937, 42 U.S.C. §§ 1437-1440 (the "Act" or "Housing Act"), is a federal grant program under which HUD provides formula-based assistance to local public housing authorities ("PHAs") for the development, operation, maintenance and modernization of public housing projects.   Congress vested responsibility for administering housing programs in local PHAs rather than in the federal government.   See 42 U.S.C. § 1437 ("It is the policy of the United States . . . to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs.").   Under the Housing Act, HUD provides monetary assistance to PHAs for the development, operation, and maintenance of low-income housing.   42 U.S.C. §§ 1437b-1437i. In exchange for the subsidy, PHAs must comply with federal regulations promulgated by HUD under the Housing Act.   See generally id. § 1437 et seq.   The terms of this grant agreement are set forth in Annual Contributions Contracts between HUD and the PHA.   See id. § 1437d.

If a PHA substantially defaults on its obligation under such contract, the Housing Act – and in particular, paragraph (3) of section 6(j) of the Act (42 U.S.C. 1437d(j)(3)) – grants HUD broad discretion to deal with the problematic PHA.   See id. § 1437d(j)(3).   For example, it authorizes HUD to: solicit proposals for alternative management of the housing or programs of the PHA, § 1437d(j)(3)(A)(i); petition certain courts for the appointment of a "receiver" of the PHA, § 1437d(j)(3)(A)(ii); take possession of the all or part of the PHA, § 1437d(j)(3)(A)(iv); and require the PHA to make other arrangements that are acceptable to HUD and in the best interest of housing program beneficiaries, § 1437d(j)(3)(A)(v).

3

If HUD petitions one of the specified courts for appointment of a "receiver" under § 1437d(j)(3)(A)(ii), then the court will, upon finding that a substantial default has occurred, "appoint a receiver to conduct the affairs" of all or part of the PHA.   Id. § 1437d(j)(3)(F).   If such a receiver is appointed, then in addition to the powers accorded by the court, the receiver may take certain specified actions under the Housing Act, such as abrogating contracts, demolishing or disposing of PHA properties, preempting State or local civil service laws, or seeking consolidation of PHAs into other PHAs.   Id. § 1437d(j)(3)(C).   The court that appoints the receiver may terminate the appointment upon the petition of "any party," if it determines that all defaults have been cured or the PHA is capable of again discharging its duties.   Id. § 1437d(j)(3)(G).

As an alternative to seeking a court-appointed "receiver," paragraph (3) of § 1437d(j) authorizes HUD to "take possession" the PHA on its own initiative, without petitioning for a receiver or otherwise involving a court.   Id. § 1437d(j)(3)(A)(iv).   If HUD does decide to take possession in this manner, then "without any action by a district court of the United States," the Housing Act confers upon HUD all the authority that a district court could confer upon a "receiver."   Id. § 1437d(j)(3)(D)(i)(VI).   Likewise, in conducting the affairs of the PHA, paragraph (3) specifically authorizes HUD to take various actions similar to those that receivers are specifically authorized to take, such as abrogating contracts, demolishing or disposing of PHA properties, preempting State or local civil service laws, or seeking consolidation of a PHA into other PHAs.   Id. § 1437d(j)(3)(D)(i)(I)-(V).

The Housing Act prohibits judicial review of HUD's decision to take possession of a PHA or of any other decision that the Secretary makes under paragraph (3).   The Act states:   "A decision made by the Secretary under this paragraph shall not be subject to review in any court of

the United States, or in any court of any State, territory, or possession of the United States."   42

U.S.C. 1437d(j)(3)(E).   Further, if HUD does decide to take possession of a housing authority, or

if a receiver is appointed, then by operation of law, the acts of HUD or the receiver are deemed to

be the acts of the PHA, and any liability incurred is imputed to the PHA, not HUD or the receiver.

In those circumstances,

> the Secretary or receiver shall be deemed to be acting not in the official capacity of
> that person or entity, but rather in the capacity of the public housing agency, and
> any liability incurred, regardless of whether the incident giving rise to that liability
> occurred while the Secretary or receiver was in possession of all or part of the
> public housing agency (including all or part of any project or program of the
> agency), shall be the liability of the public housing agency.

42 U.S.C. § 1437d(j)(3)(H).

## II.    Factual Background

Since as early as 1972, HUD (including its predecessor organization, the United States

Public Housing Administration) has provided funding to the ESLHA pursuant to terms set forth in

an Annual Contributions Contract.   Am. Compl. ¶¶ 21-26.   On October 20, 1985, HUD

determined that the ESLHA had violated the terms of that contract, and thus made a Declaration of

Substantial Default and Substantial Breach of Annual Contributions Contract.   See id. ¶ 21 &

Exh. A.   As a result of these various substantial defaults, HUD took possession of the ESLHA and

the operation of its federally supported projects.   See id. ¶¶ 27-29.   Thereafter, HUD appointed a

HUD employee, commonly referred to by HUD as an "administrative receiver," to exercise

control over the Housing Authority and its projects and programs.   Id. ¶¶ 30-34.   The ESLHA

has remained under HUD's control ever since.   Id. ¶ 34.

On August 22, 2013, the ESLHA, acting under HUD's control, decided to transfer control

of one of the programs administered by the ESLHA, commonly known as the "Section 8 voucher

program," to the St. Clair County Housing Authority ("SCCHA").   Id. ¶¶ 53-54.   The transfer of

the Section 8 voucher program was accomplished, at least in part, through an intergovernmental

agreement between the ESLHA and the SCCHA.   Id. & Exhibit F.   As Exhibit F to plaintiffs'

amended complaint indicates, ESLHA entered into an agreement with SCCHA "granting

jurisdictional authority to the SCCHA" to operate the Section 8 voucher program "within the

jurisdiction of the ESLHA, which is the corporate limits of the City of East St. Louis."   Id. Exh. F.

As a result of the ESLHA's resolution, the SCCHA now controls the voucher program in East St.

Louis.   Id. ¶ 55.   Although the voucher program's operation was thus transferred to SCCHA, the

ESLHA retains control over its public housing program, a separate and distinct program under the

Housing Act.   See, e.g., Paris v. Department of Housing and Urban Development, 843 F.2d 561,

563-64 (1st Cir. 1988) (discussing the two distinct programs).

**III.    The Instant Litigation**

In September 2013, the City of East St. Louis and five individuals filed this action against

HUD.   The original complaint sought to prevent a possible transfer of the public housing program

from ESLHA to the St. Clair County Housing Authority ("SCCHA").   Compl. (ECF No. 2).

Plaintiffs claimed that any such transfer would violate the Act, id. ¶¶ 63-71, as well as certain

agreements, id. ¶¶ 52-62.   Defendant moved to dismiss, explaining that plaintiffs' claims were not

ripe because:   (1) HUD had not yet decided to transfer control over the public housing program to

the St. Clair County Housing Authority; (2) HUD was still considering whether to do so, and was

also considering various alternatives to such a transfer; and (3) the final decision on what to do, if

anything, was still subject to various as-yet unknown contingencies.   Defendant's Motion to

Dismiss (ECF No. 16) & supporting Declaration of Sandra B. Henriquez.   Defendant explained

that the complaint was also subject to dismissal because plaintiffs lacked standing, and because the Housing Act expressly prohibits suits against HUD for acts taken while in possession of a PHA. Id.  Any liability for some future "transfer" of the public housing program, the motion explained, would not be that of HUD, but that of the ESLHA, which was not a party to the suit.   Id.

In response, plaintiffs largely abandoned their original claims based on the anticipated transfer and have now filed an amended complaint asserting all new claims.   Rather than merely seeking to prevent a future transfer of the ESLHA public housing program, plaintiffs now seek to seize control of the ESLHA for themselves, reversing HUD's decision to take possession of the ESLHA and terminating HUD's control over the ESLHA entirely.   Count I of the new complaint asks the Court to "terminate the HUD receivership," end HUD's control over the ESLHA, and "return it to the Local Commissioners."   Am. Compl. ¶ 73.   Moreover, while the original complaint focused on plaintiffs' concerns about a possible future transfer of the public housing program, Count II now focuses on the prior transfer of the Section 8 voucher program in 2013. Plaintiffs now claim that this prior transfer was illegal and seek an order declaring the transfer "null and void," as well as an order requiring HUD to "cease and desist" further attempts to transfer assets and projects of the ESLHA.   Id. ¶ 77.   Finally, the amended complaint now adds new defendants, the ESLHA and two HUD officials sued in their official capacities: (1) the Secretary of HUD; and (2) John Finger, the HUD employee currently assigned to run the Housing Authority on the Secretary's behalf.   Id. ¶¶ 14, 16-17.

## DISCUSSION

Plaintiffs' claims should be dismissed for lack of jurisdiction because, among other reasons, they are expressly barred by the plain language of the Housing Act.

## I.    The Housing Act Prohibits Judicial Review of Count I

Count I of the Amended Complaint asks the Court to "[t]ake control of the Housing Authority out from under [the HUD's] control and return it to the Local Commissioners pursuant to Illinois state law."   Am. Compl. ¶ 73.   Contrary to plaintiff's assertions, however, the Housing Act does not authorize the Court to grant such relief.   To the contrary, it expressly prohibits review of the Secretary's decisions in this area, including decisions to take possession of a PHA, such as the ESLHA.   Accordingly, Count I should be dismissed.

### A.  Count I Should be Dismissed Because the Housing Act Explicitly Precludes Judicial Review of HUD's Decision to Take Control of the Housing Authority

The applicable ban on judicial review is unambiguous:   "A decision made by the Secretary under this paragraph shall not be subject to review in any court of the United States, or in any court of any State, territory, or possession of the United States."   42 U.S.C. § 1437d(j)(3)(E). There is no doubt that HUD's decision to exercise control over the Housing Authority is a decision "under this paragraph" – i.e,, paragraph (3) of 42 U.S.C. § 1437d(j) – that is not subject to judicial review because 42 U.S.C. 1437d(j)(3) expressly authorizes HUD to take possession of a PHA in substantial default and grants HUD full authority to control operations of such PHAs.   See § 1437d(j)(3)(A)(iv) (stating that upon a substantial default, the Secretary may "take possession of all or part of the public housing agency"); id. § 1427d(j)(3)(D)(i)(VI) (granting HUD all the authority that a court could grant to a receiver).   As a result, § 1437d(j)(3)(E) unequivocally precludes judicial review of the Secretary's decision to take control of the Housing Authority, and deprives the Court of authority to reverse that decision by "returning" control to the "Local Commissioners."   See, e.g., Montanans For Multiple Use v. Barbouletos, 568 F.3d 225 (D.C. Cir. 2009) (provision stating that decisions are not "subject to judicial review" is unequivocal and

precludes review).   See also, e.g., American Society of Cataract and Refractive Surgery v. Thompson, 279 F.3d 447, 452 (7th Cir. 2002); Ortega v. U.S. Att'y. Gen., 416 F.3d 1348, 1350 (11th Cir.2005); Jordan Hosp., Inc. v. Shalala, 276 F.3d 72, 76-77 (1st Cir. 2002).

The plain language is reinforced by the obvious congressional intent behind the provision. The ban on judicial review was added to 1437d(j)(3) by Congress in 1998, along with other amendments to that paragraph, as part of a concerted effort by Congress to ensure that HUD had the broad, unfettered discretion necessary to address the problems of distressed PHAs, without being encumbered by court involvement or interference.   Congress did so in Section 565 of the Quality Housing and Work Responsibility Act of 1998 (QHWRA), Pub. L. No. 105–276 , Title V, § 565, 112 Stat. 2518, 2628–31 (1998), entitled "Expansion of Powers for Dealing With Public Housing Agencies In Substantial Default" (codified at 42 U.S.C. 1437d (j)(3)).   While the prior version of § 1437d(j)(3) already authorized HUD to petition a district court to appoint a receiver for a substantially defaulting PHA, see 42 U.S.C. § 1437d(j)(3) (1997), Congress in 1998 explicitly authorized HUD to, inter alia, take over such PHAs on its own initiative, and provided that in such instances, HUD would have, without any action by a district court, all the authority that a court could confer upon a receiver.   See 42 U.S.C. § 1437d(j)(3)(A)(iv) & (D)(i)(VI).   At the same time, Congress added the ban on judicial review of HUD decisions "under this paragraph," id. § 1437d(j)(3)(E), and likewise added a provision immunizing HUD from suit for actions taken while in possession of a PHA, id. § 1437d(j)(3)(H).   As one of the legislation's co-sponsors explained, the amendments "provide[] HUD . . . with the necessary tools and powers to deal with troubled agencies and to protect public housing residents."   144 Cong. Rec. 24422 (Oct. 8, 1998) (statement of Sen. Mack).

9

For purpose of this analysis, it makes no difference that HUD initially took possession of the ESLHA in 1985, before Congress amended § 1437d(j)(3) to expressly preclude judicial review of HUD's decisions thereunder.   Congress explicitly made those amendments retroactive, so they apply regardless of the fact that HUD took possession of the ESLHA in before their enactment. See QHWRA, Pub. L. No. 105–276 , Title V, § 565(b), 112 Stat. 2518, 2631 (1998) ("The provisions of, and duties and authorities conferred or confirmed by, the amendments made by subsection (a) shall apply with respect to any action taken before, on, or after the effective date of this Act and shall apply to any receiver appointed for a public housing agency before the date of the enactment of this Act.").

In short, this Court has no authority to second-guess HUD's decision to maintain possession of the ESLHA, or to take such possession in the first place.   Congress expressly prohibited judicial review of such decisions, and thus, Count I should be dismissed.

## B.  The Housing Act Does Not Authorize the Relief Plaintiff Seeks In Count I

Ignoring the provision of the Housing Act that bars judicial review of Count I, 42 U.S.C. § 1437d(j)(3)(E), plaintiffs focus on a neighboring provision, § 1437d(j)(3)(G), which plaintiffs claim authorizes the relief they seek.   But plaintiffs are misreading the plain language of the Act, which not only prohibits review, but contains no meaningful standard by which a Court could evaluate HUD's decision under § 1437d(j)(3), to maintain possession and control over a PHA. Accordingly, even if Congress had not already expressly prohibited judicial review, plaintiffs' claim under Count II would be subject to dismissal.

Contrary to plaintiffs' assertion, § 1437d(j)(3)(G) does not authorize courts to take control of a PHA away from HUD or otherwise interfere with HUD's discretionary authority when it has

taken possession of a PHA.   It simply states:   "The appointment of a *receiver pursuant to this paragraph* may be terminated, upon the petition of *any party*, when *the court* determines that all defaults have been cured or the public housing agency is capable again of discharging its duties." 42 U.S.C. § 1437d(j)(3)(G) (emphases added).   Thus, the provision authorizes "the court" to terminate the appointment of a "receiver" where the court has made such an appointment pursuant to the earlier provisions of "this paragraph," *i.e.*, as provided in § 1437d(j)(3)(A)(ii) & (F).   It has no applicability where, as here, HUD has itself taken possession and control of a PHA on its own initiative, without court involvement, as described in § 1437d(j)(3)(A)(iv).

This follows from the language and structure of paragraph (3) as a whole.   A "receiver" – as opposed to an "administrative receiver" – is appointed by a court pursuant to judicial proceedings specifically described in paragraph (3).   See, e.g., id. § 1437d(j)(3)(A)(ii) (stating that HUD may petition to certain identified courts for appointment of a "receiver" of the PHA for purposes of having powers described in § 1437d(j)); id. § 1437d(j)(3)(F) (explaining such proceedings and stating, inter alia, that upon a determination that "substantial default" has occurred, the court shall appoint a "receiver" to conduct the affairs of the PHA "in a manner consistent with this chapter").   The authorization to terminate the appointment of a "receiver" in § 1437d(j)(3)(G) thus refers to situations where the court itself has made the appointment, as it is authorized to do in the immediately preceding subparagraph, § 1437d(j)(3)(F).   This is also clear from § 1437d(j)(3)(G)'s specific reference to "the" court, which could only refer back to the previously-identified court that appoints the receiver in proceedings under § 1437d(j)(3)(A)(ii) and § 1437d(j)(3)(F).   Likewise, the provision's reference to "any party," presupposes the existence of a prior judicial proceeding to which someone can be a "party."   In this case, of

11

course, there have been no such proceedings, and certainly no "appointment of a receiver pursuant to this paragraph."   HUD took possession of the ESLHA on its own initiative without any court involvement.

Plaintiffs' argument to the contrary seems to rest on the fact that both the statute and HUD have used the term "administrative receiver" to refer to an individual who is appointed by HUD directly to operate a PHA.   But the language of the Act itself clearly distinguishes between a "receiver" and an "administrative receiver," making clear that these are two entirely different things.   A "receiver," is appointed by a court in judicial proceedings described in paragraph 1437d(j)(3).   An "administrative receiver," by contrast, is appointed by HUD directly after HUD has taken possession of a PHA as authorized in § 1437d(j)(3)(A)(iv).   See, e.g., id. § 1437d(j)(3)(B)(ii)(III)(bb) & (IV).   The two terms are not interchangeable under the Act, and when a provision is intended to refer to both "receivers" and "administrative receivers," it refers to each separately.   See, e.g., id. § 1437d(j)(3)(H) (referring separately to acts of a "receiver" appointed "by a court" and an "administrative receiver appointed by the Secretary").   The provision on which plaintiffs rely only authorizes courts to terminate the appointment of a "receiver" appointed by the court under the paragraph, not an "administrative receiver" appointed by HUD.   Thus, the plain language of the provision makes clear it has no applicability here.[2]

_____

[2] To be clear, the HUD employee responsible for operating the Housing Authority, here John Finger, probably does not even qualify as an "administrative receiver" within the meaning of the Act, notwithstanding HUD's use of the term to describe him.   Since the HUD employee is the Secretary's subordinate officer, acting pursuant to his own delegated authority as agent of the Secretary, the acts of the employee in this context are likely the acts of the Secretary himself. See U.S. Telecom Ass'n v. FCC, 359 F.3d 554, 565 (D.C. Cir. 2004) ("When a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent.").   By contrast, use of the term "administrative receiver" in the statute appears to refer to situations where the PHA is, by express appointment of HUD, under the control of some individual or entity outside of HUD, rather than HUD itself.   See id. (distinguishing delegations to outside parties from delegations to subordinate agency officers).   In any event, the Court need not decide whether the HUD employee technically qualifies as an "administrative receiver" within the meaning of the statute, since the issue is not

12

Indeed, plaintiffs are not actually seeking termination of an "appointment" at all, much less the "appointment of a receiver pursuant to this paragraph."   Instead, they are asking the Court to terminate HUD's control over the ESLHA and "return" it to local authorities.   Am. Compl. ¶¶ 65-68, 73.b.   But HUD does not control the ESLHA by virtue of any "appointment," nor could termination of an "appointment" end HUD's control.   Rather, HUD's authority to control the ESLHA exists by virtue of HUD's decision to "take possession" thereof.   See id. § 1437d(j)(3)(D) (stating that if HUD "takes possession" of a PHA, then HUD shall have various enumerated powers over the PHA).   Since § 1437d(j)(3)(D) expressly predicates HUD's control on the act of taking "possession," rather than on any act of "appointment," termination of an "appointment" under § 1437d(j)(3)(G) could not possibly end HUD's control.[3]   Application of § 1437d(j)(3)(G) only makes sense where the "appointment" itself gives rise to control over the PHA, as is the case when a court appoints a receiver under § 1437d(j)(3)(A)(ii).   See id. § 1437d(j)(3)(C) (stating that if a receiver is "appointed" thereunder, then the receiver shall have various enumerated powers over the PHA).   In such cases, termination of the "appointment" terminates the receiver's authority over the PHA, by eliminating the statutory predicate for such authority.

Had Congress intended to authorize courts to terminate HUD's "possession" taken under § 1437d(j)(3)(A)(iv) & (D), Congress would have done so explicitly, just as it did when it authorized courts to terminate their own "appointments" made under § 1437d(j)(3)(A)(ii) & (C) & (F).   Id. § 1437d(j)(3)(G).   Congress did not do so.   See, e.g., TransAmerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979) ("[W]here a statute expressly provides a particular remedy or

---

relevant to plaintiffs' claim.
[3]   One might quibble about whether the HUD employee assigned to operate the ESLHA on the Secretary's behalf could be seen as having been "appointed" within the meaning of § 1437d(j)(3)(G).   But the debate would be irrelevant because the termination of any such "appointment" would do nothing to end HUD's "possession" of the housing authority.

remedies, a court must be chary of reading others into it.").    To the contrary, as already explained, Congress expressly prohibited review of any decisions made by HUD under § 1437d(j)(3), including any decision § 1437d(j)(3)(A)(iv).    Id. § 1437d(j)(3)(E).

In fact, given that the Housing Act imposes no discernable limits or restrictions on how or when HUD chooses to terminate its own possession of a PHA, plaintiffs' claim would be subject to dismissal even in the absence of Congress's explicit prohibition on judicial review.    There is no judicial review of agency action where a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."    Heckler v. Chaney, 470 U.S. 821, 830 (1985).    See also, e.g., Lalani v. Perryman, 105 F.3d 334 (7th Cir. 1997).    That is exactly the case here.    Again, this is hardly surprising given that the 1998 amendments to the relevant provisions were intended to afford HUD the broad, unfettered discretion it needs to address the problems of distressed PHAs.    Consistent with this purpose, the Act expressly grants HUD broad discretionary authority over PHAs of which it has taken possession, § 1437d(j)(3)(D)(i), and contains nothing that requires or even suggests that HUD should "terminate" that possession, much less "return" that possession to local authorities under any particular set of circumstances.    Nor is there any expectation that HUD will necessarily "return" the PHA at all, as the Act itself identifies possible alternatives that HUD could pursue, such as seeking the establishment of a new PHA, § 1437d(j)(3)(D)(i)(III), or seeking consolidation of the PHA with another PHA, § 1437d(j)(3)(D)(i)(IV).

In short, the Act commits to HUD's discretion the decision whether and how to "terminate" and/or "return" control over a PHA in its possession.    Accordingly, even if Congress had not explicitly prohibited judicial review of HUD's decisions under this paragraph, Count I would be

14

subject to dismissal.

## II.   Plaintiffs' Claim Challenging the Transfer of the Voucher Program (Count II) Should be Dismissed

Count II of the amended complaint asserts that HUD unlawfully transferred control of the Section 8 Voucher program from the ESLHA to the St. Clair County Housing Authority.   In particular, plaintiff s assert that the transfer violated 42 U.S.C. § 1437d(j)(3)(D)(i)(IV), which authorizes HUD to seek "consolidation" of all or part of a PHA into other, well-managed PHAs "as permitted by applicable State and local laws."   Am. Compl. ¶¶ 56-61.   According to plaintiff, the voucher program transfer was not "permitted" by applicable state law and thus also violated the terms of § 1437d(j)(3)(D)(i)(IV).   This claim is meritless and not subject to judicial review.

### A.   Count II Should Be Dismissed Because The Housing Act Precludes Judicial Review of any Decision to Transfer the Voucher Program

As already explained, the Act provides that the Secretary's decisions under paragraph (3) of § 1437d(j) "shall not be subject to review in any court of the United States."   42 U.S.C. § 1437d(j)(3)(E).   Plaintiffs asserts that the challenged transfer was a "consolidation" within the meaning of § 1437d(j)(3)(D)(i)(IV), and that it did not comply with the restrictions of that provision.   Assuming (for the sake of argument) that the transfer of the voucher program was indeed a "consolidation" within the meaning of § 1437d(j)(3)(D)(i)(IV), then it was also a decision under paragraph (3) of § 1437d(j)(3), and thus § 1437d(j)(3)(E) prohibits judicial review of that decision.   As explained above, this ban on judicial review is unequivocal and deprives the Court of jurisdiction to review HUD's decision under this paragraph.   As discussed, Congress has made clear that HUD's decisions in this area are not subject to judicial review because HUD needs broad, unfettered discretion to deal with programs of problematic PHAs, including (and perhaps

15

especially) PHAs over which HUD has taken control.   Accordingly, Count II – like Count I – should be dismissed under the plain language of § 1437d(j)(3)(E).

> **B.  Count II Should be Dismissed Because the Housing Act Immunizes HUD from Liability for Acts Taken While In Possession of the Housing Authority**

Even if the transfer were not a decision "under" 42 U.S.C. §1437d(j)(3),[4] the claims against HUD and various HUD officials would still be still subject to dismissal for lack of jurisdiction.   The Housing Act expressly precludes suits against HUD for actions taken while in possession of a PHA.   Specifically, it provides that:

> <u>If the Secretary (or an administrative receiver appointed by the Secretary) takes possession of a public housing agency</u> (including all or part of any project or program of the agency), or if a receiver is appointed by a court, <u>the Secretary or receiver shall be deemed to be acting not in the official capacity of that person or entity, but rather in the capacity of the public housing agency, and any liability incurred</u>, regardless of whether the incident giving rise to that liability occurred while the Secretary or receiver was in possession of all or part of the public housing agency (including all or part of any project or program of the agency), <u>shall be the liability of the public housing agency.</u>

42 U.S.C. § 1437d(j)(3)(H) (emphases added).   Thus, if HUD takes possession of a PHA, as it has done in this case, then its acts are imputed to the PHA, and any liability incurred is likewise that of PHA, and not HUD.

Accordingly, the transfer of the voucher program is deemed the act of the Housing Authority, and any liability resulting therefrom would be that of the Housing Authority, not HUD or its officials.   42 U.S.C. § 1437d(j)(3)(H).   Plaintiffs' claims against HUD should be dismissed for this reason as well.   See, e.g., Garcia v. Housing Authority of New Orleans, Civ. No. 12-1843 (Order dated Jan. 3, 2014, E.D. La.) (granting HUD Secretary's motion to dismiss for lack of jurisdiction under § 1437d(j)(3)(H) because housing authority was in administrative receivership

---

[4] Of course, if the transfer was not a decision under § 1437d(j)(3), then plaintiffs would have no basis to say that § 1437d(j)(3)(D)(i)(IV) applies at all, and their claim would have to be dismissed on the merits.

and thus any liability incurred by the Secretary "shall be the liability" of the housing authority) (Attached as Exhibit 1); Smith v. Virgin Islands Housing Authority, 2011 WL 285858 (D.Virgin Islands 2011) (claims dismissed under § 1437d(j)(3)(H) because complaint challenged HUD's actions while in control of housing authority); Greene v. Philadelphia Housing Authority, 789 F.Supp.2d 582, 585-86 (E.D. Pa. 2011) (finding a lack of jurisdiction over complaint against HUD because HUD had taken over the housing authority, and pursuant to § 1437d(j)(3)(H), was not susceptible to suit); Walker v. Woods, 2011 WL 2637328 n. 10 (E.D.La. 2011) (holding that plaintiff's claim ran against the housing authority, not against HUD, and citing § 1437d(j)(3)(H)).

Again, this conclusion is not merely required by the plain language of the Act, it is consistent with Congress's intent.   Like the ban on judicial review in § 1437d(j)(3)(E), Congress added § 1437d(j)(3)(H) to the Housing Act in 1998, as part of its effort to ensure that HUD could effectively deal with problematic PHAs.   One of the legislation's co-sponsors explained that the amendments "require[] tough, swift action against [PHAs] with severe management deficiencies and provide[] HUD . . . with the necessary tools and powers to deal with troubled agencies and to protect public housing residents." 144 Cong. Rec. 24422 (Oct. 8, 1998) (statement of Sen. Mack). Section 1437d(j)(3)(H), which shields HUD from litigation and liability for acts taken while in possession of PHAs, plays a critical role in achieving that purpose.   If HUD were to expose itself to litigation and potential liability for actions taken while in possession of a housing authority, it would be understandably reluctant to take the necessary actions intended by Congress.   See Smith, 2011 WL 285858 at *5 n. 7 (explaining that "it is not unreasonable to infer that Congress, realizing that HUD's increased authority to operate PHAs would expose the agency to greater liability, wished to reign in the cost of such exposure and thus enacted the provision asserting

17

HUD's immunity to suit in those circumstances").

### C.  In any Event, Count II Fails to State a Claim Because HUD's Transfer of the Voucher Program did not violate 42 U.S.C. § 1437d(j)(3)(D)(i)(IV)

In any event, plaintiffs' claim challenging the transfer of the voucher program is legally meritless and thus would be subject to dismissal under Rule 12(b)(6) even if the Court had jurisdiction to consider it.   Plaintiffs assert that the transfer violated state law, and thus also violated 42 U.S.C. § 1437d(j)(3)(D)(i)(IV), which authorizes consolidation "as permitted by applicable State and local laws."   According to plaintiffs, the Illinois Housing Authorities Act prohibits the St. Clair County Housing Authority from operating the voucher program in East St. Louis.   See Am. Compl. ¶¶ 56-57.   They rely on 310 ILCS 10/3, which states: "In case a county is the area of operation of an Authority, the area shall not be deemed to include any city . . . within the county within which an Authority at that time exists."   Contrary to plaintiffs' assertion, however, this provision does not prohibit St. Clair County Housing Authority from operating the voucher program within the ESLHA's area of operation.

Quite the opposite, the Illinois Act specifically allows PHAs to act outside their area of operation, inter alia, by contract with another PHA.   310 ILCS 10/30 ("A housing authority may operate outside of its area of operation . . . by contract with another housing authority"); Hills v. Gautreaux, 425 U.S. 284, 298 n. 14 (1976) (under Illinois law, a "housing authority may act outside its area of operation by contract with another housing authority").   That is precisely what has occurred in this case.   Indeed, the last page of plaintiffs' own Exhibit F indicates that ESLHA entered into an agreement with SCCHA "granting jurisdictional authority to the SCCHA" to operate the Section 8 voucher program "within the jurisdiction of the ESLHA, which is the corporate limits of the City of East St. Louis."   Am. Compl. Exh. F.   Attached hereto as Exhibt 2

18

is the complete, signed version of the Exhibit F resolution, along with the signed version of the intergovernmental agreement between ESLHA and SCCHA.   There is simply no basis for plaintiffs' claim that the voucher transfer was unlawful.

### D.  Count II Is Not Otherwise Subject to Review

Although Count II focuses primarily on the transfer of the voucher program, plaintiffs also seek an order requiring HUD to "cease and desist all further attempts to transfer the operation of the remaining assets and projects of the Housing Authority to the St. Clair County Housing Authority."   Am. Compl. ¶ 77.b.   But plaintiffs do not identify independent grounds to challenge any such future transfer, relying solely on their allegations challenging transfer of the voucher program.   Accordingly, any such claim would be subject to dismissal for all the same reasons that the law requires dismissal of their challenge to transfer of the voucher program, as discussed above.   Moreover, a claim challenging a potential future transfer of the public housing program would be identical to the claim asserted in plaintiffs' original complaint (ECF No. 16), and would also be subject to dismissal for the reasons explained in HUD's original motion to dismiss, including lack of ripeness.[5]   As explained therein, plaintiffs have identified no final agency decision regarding a possible future transfer and are thus in effect asking this Court for an improper advisory opinion on the subject.   The Court has no jurisdiction to grant such relief. *See*, *e.g.*, *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008).

### CONCLUSION

For the foregoing reasons, defendants respectfully ask the Court to dismiss the amended

---

[5] Strangely, plaintiffs themselves incorporate the supporting declaration into the amended complaint, asserting that it shows HUD has made "concrete plans" with respect to a future transfer.   Am. Compl. ¶ 62.   In fact, it says precisely the opposite, explaining at length that no final decision about whether to make any such transfer, and that any decision in that regard is still subject to ongoing deliberation and contingencies.   (ECF No. 16-1).

complaint under Fed. R. Civ. P. 12(b)(1).

Dated:   July 17, 2014                           Respectfully submitted,

                                                 STUART F. DELERY
                                                 Assistant Attorney General
                                                 STEPHEN R. WIGGINTON
                                                 United States Attorney

                                                  _/s/ Peter M. Bryce_____
                                                 BRIAN KENNEDY
                                                 PETER M. BRYCE
                                                 (IL Bar No. 6244216)
                                                 Trial Attorney
                                                 United States Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 P.O. Box 883, Room 7138
                                                 Washington, D.C. 20530
                                                 Tel: (202) 616-8335
                                                 Fax: (202) 616-8470
                                                 E-mail: peter.bryce@usdoj.gov
                                                 Attorneys for Federal Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **City of East St. Louis, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Civil No. 13-982-DRH-PMF** |
| | ) | |
| | ) | |
| **United States Department of Housing** | ) | |
| **and Urban Development,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROOF OF SERVICE**

I hereby certify that on July 17, 2014, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which will send notification of such filing(s) to the following:

Michael L. Wagner
Charles Pullium

_/s/ Peter M. Bryce_____
PETER M. BRYCE
(IL Bar No. 6244216)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Room 7138
Washington, D.C. 20530
Tel: (202) 616-8335
Fax: (202) 616-8470
E-mail: peter.bryce@usdoj.gov
Attorney for Federal Defendants